[S. F. No. 1736.   Department Two.—October 27, 1900.]

JAMES L. PATTERSON, Appellant, v. BARTLETT DOE et al., Executors, etc., Respondents.

STATUTE OF LIMITATIONS — ORAL CONTRACT — DEED OF MINE — VERBAL AGREEMENT TO PAY UPON RESALE.—A cause of action upon an oral contract to pay a specified sum upon the resale of a mine deeded by the promisee to the promisor, together with the sale of other mines belonging to the promisor, accrued at the time of such resale, and is barred within two years thereafter, under subdivision 1 of section 339 of the Code of Civil Procedure.

ID.—ACTION AGAINST EXECUTORS—NONSUIT.—In an action upon such cause of action against the executors of the deceased promisor,

the executors are entitled to a nonsuit, on the ground that the action is barred by the statute.

ID.—EFFECT OF DEED OF MINE—INSTRUMENT IN WRITING.—The deed of the mine cannot be considered as a written instrument taking the oral agreement out of the statute, there being no acknowledgment or promise contained in the deed relative to the verbal understanding between the parties. The cause of action is not founded upon an instrument in writing, within the meaning of the code, merely because such an instrument would be a link in the chain of evidence establishing the cause of action, if it does not contain or prove the contract sued upon.

ID.—LETTER UPON PREVIOUS UNCONSUMMATED TRANSACTION—ABSENCE OF PROMISE—IRRELEVANCY.—A letter from the decedent written in relation to a previous unconsummated transaction for the transfer of the mine by plaintiff directly to another party, to the effect that "if the sale goes through, the money comes through me," does not contain a promise, and has no relevancy to the verbal contract made at the time of the deed to the decedent.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion.

Reddy, Campbell & Metson, for Appellant.

R. E. Houghton, and Houghton & Houghton, for Respondents.

GRAY, C.—The judgment was for defendants, and plaintiff appeals from an order denying his motion for a new trial.

This action was commenced April 8, 1895, to recover twenty thousand dollars on a contract alleged to have been entered into between plaintiff and John S. Doe on or about the first day of November, 1887, for a sale of the Invincible mine. The defendants pleaded subdivision 1 of section 339 of the Code of Civil Procedure, limiting the right of action "upon a contract, obligation, or liability not founded upon an instrument of writing" to two years; and at the conclusion of plaintiff's evidence, on the trial, defendants moved for a nonsuit, stating as the third ground of said motion that "if the plaintiff ever made any agreement with Doe for the sale to him, Doe, of the Invincible mine, the agreement was not in writing, but by

parol; and the case is barred by subdivision 1, section 339, of the Code of Civil Procedure." We think the motion was properly granted on the ground quoted.

On March 31, 1887, J. S. Doe and John R. Scupham entered into a written agreement, whereby said Doe agreed to sell to Scupham certain mining property in the Calico mining district for three hundred thousand dollars on demand and payment of said sum by Scupham between the 1st and 15th of July, 1887. This time was subsequently extended to September 1, 1887. Scupham had an arrangement by which he was intending to sell this property to Morton and Robinson at an advanced price; and on consultation between Scupham and Doe it was thought advisable to secure a contract with plaintiff for the sale of the Invincible mine, the intention being to enlist plaintiff's interest in effecting a sale of Doe's mining property, as well as his own, to said Morton and Robinson. Accordingly, after some negotiations, Scupham obtained a written contract with Patterson dated July 15, 1887, wherein Patterson agreed to aid Scupham in effecting a sale of the Doe mining property in the Calico mining district under the contract then existing between Scupham and Doe, and, in case the sale was consummated, to convey to Scupham the Invincible mine; in consideration of which Scupham agreed, in case of the consummation of said sale under the pending contract or any extension thereof, to pay to Patterson twenty thousand dollars. Soon after the execution of the last-mentioned contract Patterson wrote a letter to Scupham stating that he wanted the money coming to him to come through Doe. Thereupon Scupham handed the Patterson contract and said letter over to Doe and said to him: "Now the matter is in your hands, Mr. Doe," and Doe replied: "Yes, it is in my hands, and I will attend to it." Thereafter, at the request of Doe, plaintiff Patterson made a deed of the Invincible mine to Robinson, one of the parties with whom negotiations were being had for the sale of all the mines. This deed was forwarded to Doe and the receipt thereof acknowledged in a letter as follows:

"San Francisco, Nov. 15, '87.

"J. L. Patterson.

"Dear Sir: Yours with deed of Invincible is at hand. If the sale goes through, the money comes through me, also Tucker's and Peterson's 20,000—5,000—2,500. Scupham, I expect, goes to Calico to-day, also Myers. This business, if at all, will not be closed much before January 1st. If it does, then I don't want many supplies on hand at that time as I am not paid for them, and in ordering, calculate on this. I have the use of the mill until the money is paid.

"J. S. DOE."

Patterson was superintendent for Doe in the mines, and said Tucker and Peterson were also employed in some capacity therein. The figures in the letter signify that of the proceeds of the contemplated sale twenty thousand dollars was to go to Patterson, five thousand dollars to Tucker, and two thousand five hundred dollars to Peterson. It was agreed between Doe and Scupham that this twenty thousand dollars to Patterson should be paid out of the excess over three hundred thousand dollars that Scupham was to get from Robinson and Morton for the property. It was not to come out of the three hundred thousand dollars that Doe was to receive for his property. The time for performance of the Scupham and Doe contract expired, and no sale was made under it. Negotiations with Robinson and Wilson were still continued, however, and late in the fall of 1887 they were given a thirty-day written option on the property, and a deed from Doe of his property, together with the deed from Patterson to Robinson of the Invincible mine, was deposited in escrow with the Anglo-Californian Bank. It was on receipt of this deed from Patterson to Robinson for the purposes of said escrow that Doe wrote the above-quoted letter of November 15, 1887, to Patterson. The negotiations with Robinson and Morton came to an end finally without effecting the sale of anything, and the deeds were withdrawn from the bank. Thereafter Doe acquired other mines and continued negotiations for the sale of his mining properties with various parties until, on July 3, 1891, he sold and conveyed to Thomas B. Bishop all his mining property, including

the Invincible mine, which Patterson had previously conveyed to him by deed of date June 23, 1891, which recited a consideration of ten dollars. This sale to Bishop was certainly not made under any previous written contract with Scupham; this seems to be conceded by both parties to this appeal. Nor do we think that the evidence discloses any other agreement or contract in writing upon which the complaint in this case can rest so as to avoid the bar of the two-year statute of limitations pleaded in the answer. The appellants rely on the letter from plaintiff to Doe, dated November 15, 1887. This letter contains no promise to pay anything; and it is clear that it had no reference to the sale which was finally consummated by Doe. It is equally clear that the twenty thousand dollars spoken of in that letter had no reference to any portion of the money which was finally received for the mining properties, but, as explained by the testimony of Scupham, the twenty thousand dollars therein referred to was to come out of the amount in excess of the three hundred thousand dollars coming to Doe on the consummation of the sale to Morton and Robinson. The sale which was finally made was an entirely different transaction from the one contemplated to Morton and Robinson, and a letter which was evidently, from its terms, intended to apply only to the former cannot be held to apply in any way to the latter transaction. The deed from plaintiff to Doe is itself a written agreement, sufficient, perhaps, to take the case out of the statute of frauds as contended by appellants, and were it not for the statute of limitations, would no doubt entitle plaintiff to recover; but the deed is no answer to the two-year statute of limitations, because it contains no promise to pay the plaintiff anything. As we understand the rule, it is this: to avoid the two-year statute pleaded in the answer the action must be based upon a promise made in writing. In construing sections 337 and 339 of the Code of Civil Procedure, this court, in *McCarthy v. Mt. Tecarte Land etc. Co.,* 111 Cal. 328, at page 340, uses the following language: "But the cause of action is not upon a contract founded upon an instrument in writing, within the meaning of the code, merely because it is in some way remotely or indirectly connected

CXXX. Cal.--22

with such an instrument, or because the instrument would be a link in the chain of evidence establishing the cause of action. In order to be founded upon an instrument in writing, the instrument must itself contain a contract to do the thing for the nonperformance of which the action is brought." This language was quoted with approval in *Thomas v. Pacific Beach Co.*, 115 Cal. 136, in which latter case suit was brought on an implied *assumpsit* to recover back money paid for land under a written contract for the sale thereof; no agreement to restore the money on failure to convey the land being contained in the contract, it was held that the cause of action was barred in two years after the last payment. (See, also, *Todd v. Board of Education*, 122 Cal. 106; *Lattin v. Gillette*, 95 Cal. 317[1]; *Chipman v. Morrill*, 20 Cal. 130.)

The trial judge seems to have been correctly of the opinion that there was sufficient evidence to show that there was an understanding between plaintiff and Doe that on a resale of the Invincible mine with the other mines Doe was to pay plaintiff twenty thousand dollars. This being so, the cause of action accrued on the date of the execution of the deed to Bishop, and, this understanding resting in parol, the cause of action would be barred in two years after that date, and more than a year before the commencement of this action.

Appellant's motion to amend the complaint by adding a count on a *quantum meruit* was properly denied, because the plea of the two-year statute of limitations would still be good to the complaint as thus amended.

The statute of limitations bars a recovery by appellant, however correct his position may be on the other points presented on this appeal. We therefore refrain from considering those points.

The order denying a new trial should be affirmed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the order denying a new trial is affirmed.

McFarland, J., Temple, J., Henshaw, J.

[1] 29 Am. St. Rep. 115.