The **PICKFORD CORPORATION**,
Plaintiff,

v.

**DE LUXE LABORATORIES, INC., et al.,**
Defendants.

No. 16882.

United States District Court
S. D. California,
Central Division.

Dec. 15, 1958.

Sull Lawrence, Culver City, Cal., for plaintiff.

Ben Erlich, Beverly Hills, Cal., for defendant Motion Pictures for Television, Inc.

Musick, Peeler & Garrett, by Jesse O'Malley, Los Angeles, Cal., for defendant DeLuxe Laboratories, Inc.

HALL, District Judge.

In the memorandum filed April 10, 1958, I stated that the prints of "Tonight or Never" delivered to the wholly owned subsidiary of Telinvest (Associated Artists, Inc.) were thereafter exhibited *by Telinvest* on television. This statement is incorrect in that the exhibition on television was by the defendant Motion Pictures for Television, Inc., on license from Telinvest.

Such incorrect statement does not alter the conclusions therein reached nor the reasons therefor, as to the defendant DeLuxe Laboratories, Inc.

Defendant Motion Pictures for Television did not raise the defense of the statute of limitations in its answer, and seeks, after the close of the evidence, to amend its answer to conform to the

proof by adding such defense under Federal Rules of Civil Procedure, rule 15(b), 28 U.S.C.A.

The issue of whether or not there was a conversion, and if so, the date thereof, was tried, if not by the express consent, at least by the implied consent of all the parties. Permission to file the amendment will subserve the presentation of the merits of the action, and will not prejudice the plaintiff in maintaining the action on the merits.

■ The amendment is therefore proper and is allowed under F.R.C.P. 15 (b) which must be liberally construed and freely applied. See cases cited following 28 U.S.C.A.—F.R.C.P. 15.

■ The prints of "Tonight or Never" were delivered by DeLuxe to Associated Artists in June, 1951. Associated Artists is not a defendant, nor is its parent, Telinvest. Just when the prints were delivered by Associated Artists to Motion Pictures for Television is not clear from the evidence, and indeed, is not material as it is clear that *if* there was a conversion by defendant Motion Pictures for Television, such conversion occurred on the date of the first exhibition on television which was on April 1, 1952. That exhibition was the act of defendant Motion Pictures for Television which was "inconsistent with plaintiff's right of ownership," and it constituted conversion, if conversion there was.

The act of Motion Pictures for Television in exhibiting the picture on television without plaintiff's authority was different in its nature from the act of DeLuxe in delivering the prints without plaintiff's authority. DeLuxe did not show or exhibit the prints publicly or privately, or at all, or participate therein, and while it might be urged under Italiani v. Metro-Goldwyn-Mayer, 1941, 45 Cal.App.2d 464, 114 P.2d 370, that the conduct of DeLuxe may not constitute a conversion, it is clear from that case that where one takes a literary property and exhibits it, as Motion Pictures for Television did here, such does *not* constitute conversion although it does amount to a

tort, which is barred by California C.C.P. 339(1) within two years.

The within action was filed June 25, 1954, which was more than two years after the exhibition of the picture on April 1, 1952, and plaintiff's claim for alleged conversion, as set forth in the second cause of action against Motion Pictures for Television, is, therefore, barred by the California Statute of Limitations. And judgment on plaintiff's second cause of action must be for defendant Motion Pictures for Television, as well as for DeLuxe.

Plaintiff's claim for infringement of copyright, as set forth in the first cause of action, remains for disposition.

■ An action for infringement of a copyright is not an action for conversion. Local Trademarks, Inc., v. Price, 5 Cir., 1948, 170 F.2d 715. Infringement and conversion are wholly inconsistent with each other. By conversion the title is taken; by infringement the title remains in the original owner but is damaged by the infringer.

■ As heretofore indicated, DeLuxe did not show or exhibit the prints of the picture publicly or privately, or at all, or participate therein. It delivered the prints to Associated Artists in 1951. There is no evidence to show that DeLuxe had any knowledge of, or participation in, or approved tacitly or otherwise the delivery of the prints by Associated Artists to Motion Pictures for Television, or of the subsequent showing on television of the picture by Motion Pictures for Television.

DeLuxe is, therefore, not liable for any infringement of plaintiff's copyright to the motion picture "Tonight or Never;" and judgment on plaintiff's first cause of action must be against the plaintiff and for DeLuxe.

■ The evidence clearly shows that the plaintiff is the owner of the copyright to the motion picture film "Tonight or Never;" and also shows that Motion Pictures for Television, without license or consent of plaintiff, repeatedly exhibited said motion picture on television be-

tween April 1, 1952 and December 31, 1952. No showing was made of exhibition by or on any other medium than television.

Defendant Motion Pictures for Television thus infringed plaintiff's copyright, and is liable for the damages suffered by plaintiff for such infringement within the two-year statute, i. e., June 24, 1952, and to the profits of Motion Pictures for Television under 17 U.S.C. § 101(b).

■ The only evidence introduced concerning the "profits" of Motion Pictures for Television in connection with its distribution of the picture was that it lost $4,570.47 over the period from April 1, 1952 to its last showing, December 31, 1952. Plaintiff is, therefore, entitled to no judgment for profits.

■ Plaintiff's evidence concerning damages and the value of the motion picture "Tonight or Never" is wholly unsatisfactory, unconvincing and of no probative force. An expert witness, produced by plaintiff, testified as to the value of the motion picture "Tonight or Never" on or about the time of the acts of the defendant in first showing the picture on television, although he had never seen the motion picture.

The defendant's testimony concerning the total value of the picture was that it was between $2,000 and $3,000 in the years 1951 and 1952. Incidentally, the defendant's expert had seen the picture, and was engaged in the business of selling motion pictures for exhibition on television. The evidence showed that one of the reasons why the picture did not have greater value was that it had a series of scenes in which a male gigolo appeared to be carrying on an affair with an older woman, and that the female consummated an illicit sexual union with the male star, and spent the night with him, and for that reason a lot of stations would object to projecting such a picture by television into the homes of viewers, which would reduce its saleability and value.

The Court concludes from the whole evidence that the evidence preponderates heavily in favor of defendants as to the total value of the picture to be not less than $2,000 and to not exceed $3,000, in the years 1951 and 1952.

It makes little difference in the assessment of "such damages as the copyright proprietor may have suffered due to the infringement" [17 U.S.C. 101(b)] whether each showing was a separate infringement or not. The total value of the picture did not exceed $3,000, and hence the sum of the parts (separate showings) cannot exceed the whole. The damages to the plaintiff under the statute cannot, therefore, from the evidence, exceed $3,000.

The evidence is wanting as to where, between $2,000 and $3,000, the value does lie. While there still may be value in the picture for showing in motion picture theaters to paying audiences, that value is negligible. And the Court is justified in finding that the damage to the plaintiff is the total value of the picture, viz.: $3,000, and plaintiff is entitled to judgment in that sum against Motion Pictures for Television.

There is no evidence whatsoever to support plaintiff's claim of unfair competition, and judgment must be for defendants in that respect.

The Court finds that plaintiff, as the owner of the copyright to the motion picture "Tonight or Never," is entitled to a mandatory injunction to compel defendants Motion Pictures for Television and DeLuxe Laboratories to deliver up all positive and negative prints of the copyrighted motion picture "Tonight or Never" in the possession of either or both of them, to the Clerk of this Court for delivery to the plaintiff upon the entry of a final judgment. And plaintiff is entitled to a permanent injunction enjoining and restraining the defendants from printing, making, or exhibiting the copyrighted motion picture "Tonight or Never."

Each party will pay its own costs and attorney's fees.

Counsel will prepare findings of fact, conclusions of law, and judgment in accordance with the Court's memorandum filed April 10, 1958, and with this supplemental memorandum.